# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALBERT JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:23CV411 |
| | ) | |
| JUSTIN OXENDINE et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on two motions: (1) Defendants' Motion for Summary Judgment (Docket Entry 32) and an accompanying Motion to Seal (Docket Entry 35). Plaintiff has filed a Brief in Response to Defendants' Motion for Summary Judgment (Docket Entry 38) and Defendants have filed a Reply thereto (Docket Entry 43). All matters are ripe for disposition. For the following reasons, the undersigned orders that the Motion to Seal is granted and recommends that Defendants' Motion for Summary Judgment should be granted.

## I. BACKGROUND

On May 17, 2023, Plaintiff Albert Jackson ("Plaintiff"), prisoner of the State of North Carolina then incarcerated at Marion Correctional Institution,[1] filed a *pro se* Complaint (Complaint ("Compl.") Docket Entry 2), and was permitted, with conditions, to proceed *in forma pauperis*. (Docket Entry 3; *see also* Docket Entry 1.) Plaintiff filed the Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging excessive force in violation of his Eighth

---

[1] Plaintiff has since relocated to Alexander Correctional Institution. (Docket Entry 42.)

Amendment rights by Defendants Justin Oxendine ("Oxendine"), Wilbert Walker ("Walker"), Steven Gibson ("Gibson"), Marcus Scott ("Scott"), Patricia Holmes ("Holmes"), Jeffrey Hunt ("Hunt"), and Ronald Covington ("Covington"). (Compl. at 3-4, 6.)[2]  Plaintiff sues all Defendants in both their individual and official capacities. (*Id.*)

Plaintiff's claims arise out of allegations that, while he was incarcerated at Scotland Correctional Institution ("SCI"), he was "assaulted 5 times in a series of events on the days of 7-27-22 and 7-28-22." (*Id.* at 7, 12, 13.)[3]  Plaintiff alleges that he was

> beaten and assaulted over the course of two day [sic] in a row by [Oxendine, Walker, Gibson, and Hunt]. [Covington] participated in the assault [and] organized assaults and witness [sic] as well. [Scott] organized and witness [sic] me being assaulted and so did [Holmes]. Also officer bush [sic], officer McMillian both witness assault and/or knew about them before they happened and SPG Sergent [sic] Betha witness and knew about assault before and while they happen and even assisted in a [sic] assault.
>
> … I received a painfull [sic] back injury in which I had to undergo multiple back X-ray [sic] that led to "perminate" [sic] pain and a doctor ordering me pain medication. I received a … perminate [sic] injury to my jaw and now have "T.M.J. athritis" [sic] according to doctor. I have received a busted blood vessel to right eye that led to "perminate" [sic] slight loss of clear vision in right eye and had to be ordered to wear perminate [sic] glassed [sic] to improve sight. I also recied [sic] nose injury, two black eyes, a split lip, a split eye brow [sic], a split head, a [sic] injured elbow, and multiple bruises and open wound all over body and a chess [sic] injury[.]

(*Id.* at 13.)

First, Plaintiff alleges that on July 27, 2022, around 9:50 a.m. ("Incident One"), Walker and Gibson "both beat me and assaulted me while in handcuff in a of [sic] camera location in

---

[2] All citations herein to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF. The Complaint incorrectly listed Ronald Covington as Robert Covington. (Docket Entry 32 at 1.)

[3] Quotations are written as they appear within the source document, and obvious errors are marked with [sic]; however, some capitalizations have been changed to improve readability. The undersigned notes that Plaintiff's filings are illegible in some areas where they appear to be cut off at the bottom margin of the page. (*See, e.g.,* Compl. at 7, 13; Docket Entry 38 at 1.)

intake shower room by choking, kicking, punching, elbowing, and spraying me with O/C spray and tasering[4] me while in hand cuffs." (*Id.* at 7, 9, 13.) He further alleges that "Walker and … Gibson both beat me before exiting the shower room." (*Id.* at 7.) Plaintiff alleges that "Holmes also stood to witness me be assaulted by … Oxendine … at the time I was assaulted of [sic] camera in a [sic] intake shower cell." (*Id.* at 8.) Plaintiff alleges that "Covington witness [sic] the assault as he allowed … Oxendine into the shower room and … Covington was in fact the (officer in charge) captain on the shift, outranking all the other officers on duty." (*Id.*)

Second, Plaintiff alleges that on July 27, 2022, around 11:00 a.m. ("Incident Two"), Oxendine "can be seen on video footage acting in rage and displaying extreme anger toward me by punching and hitting the holding cage" Plaintiff was in. (*Id.* at 7, 9, 13.) Plaintiff alleges Oxendine opened "the cage without allowing or ordering me to submit to handcuff in attempt to create a physical altercation by getting in my face and pointing in my face while threatening me and instructing officer to bring me up front to be assaulted off camera by him." (*Id.*) Plaintiff goes on to allege that "[m]inutes later I was taken to a [sic] off camera location to be assaulted and beaten very badly." (*Id.* at 7) Plaintiff alleges that "Scott also stood outside the door area" during this assault. (*Id.* at 8.) He also alleges that "Scott looked and watched" while Holmes "also threatened me and made attempts to approach my holding cell" at this time. (*Id.* at 8, 9.) Plaintiff alleges that while "Holmes was threatening me and encouraging … Oxendine to assault me, she had to be pulled off the unit and restrained at the time she

---

[4] " 'OC' is an abbreviation for 'oleoresin capsicum.' OC spray is also known as pepper spray …." *United States v. Rodriguez,* 392 F.3d 539, 542 n.1 (2d Cir. 2004). Taser is a company that manufactures and sells conducted electrical weapons ("CEWs"), commonly known as tasers or stun guns. *See Taser Int'l, Inc. v. Phazzer Elecs., Inc.,* 754 F. App'x 955, 956 (Fed. Cir. 2018); *see also Dillard v. Burrs,* No. 5:20-CT-03365-M, 2023 WL 2541711, at *2 (E.D.N.C. Mar. 16, 2023) (unpublished).

was in a rage." (*Id.*) Plaintiff then alleges that "Covington was in fact a [sic] organizer of an assault while ordering" and encouraging "Oxendine to contenue [sic] to beat me on 7-27-22 around 11:30 a.m." before "officers allowed … Oxendine to enter and assault me as multiple officer [sic] stood outside the door to watch the assault, including … Covington[.]" (*Id.*) Plaintiff alleges "I was beaten extremely bad by … Oxendine." (*Id.* at 9.)

Third, Plaintiff alleges that on July 28, 2022, around 9:45 a.m. ("Incident Three"), "while being escorted to medical I was thrown to the ground and [an unknown officer] on top of me kneed me in the face several time [sic] while in hand cuffs." (*Id.* at 7, 9, 13.)

Fourth, Plaintiff alleges that on July 28, 2022, around 10:30 a.m. ("Incident Four"), he was "taken to intake where I was assaulted by … Oxendine '<u>on camera</u>' " while Plaintiff was "submitted and secured in handcuffs[;]" that Oxendine threw "multiple punches to the face and head[;]" that at this same time Plaintiff was "being chocked [sic] by … Walker by him squeezing the front of my windpipe before falling to the floor and … Oxendine having to be restrained." (*Id.*) (emphasis in original).) Plaintiff alleges that Scott "had full knowledge that I was going to be assaulted as he stood and watched … Oxendine act in rage on camera punching and smashing at the cage I was housed in[.]" (*Id.* at 7.) Plaintiff also alleges that Scott witnessed Oxendine "communicate threats[.]" (*Id.*)

Fifth, Plaintiff alleges that on July 28, 2022, around 2:30 p.m. ("Incident Five"), "Walker, … Gibson, … Hunt, and a unknown officer after being sprayed with O/C spray while being housed in a holding cage, once taken to intake room off camera I was beaten badly with sticks, punches, choked, kicked, and slammed … on the floor over and over[.]" (*Id.* at 7, 10, 13.)

4

Plaintiff alleges that "Covington had full knowledge of all the assaults." (*Id.* at 8.) Plaintiff claims he filed and completed grievances regarding the alleged constitutional violations by Defendants. (*See id.* at 14-15.) He seeks $250,000 in damages "due to the fact that I suffered large number of injuries, including injuries [to my functional mobility] that are perminat [sic] and will effect [sic] my quality of life and ability to work and perform larbor [sic] to provide for myself[.]" (*Id.* at 11.)

Based on the foregoing allegations and viewing the Complaint through the lens of liberal construction, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (stating that "[a] document filed *pro se* is to be liberally construed" and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (cleaned up)), Plaintiff pursues claims for excessive force under the Eighth Amendment. (Compl. at 4, 7-10, 13.)

On November 20, 2023, Defendants filed an Answer to the Complaint. (Docket Entry 12.) After the discovery period ended, Defendants filed the Motion for Summary Judgment currently before the Court along with a Memorandum, a Declaration, Plaintiff's medical records, incident reports, NCDAC policy and procedure documents, and other documents in support. (Docket Entries 32, 33, 34.) On December 5, 2024, Plaintiff filed a Response in opposition to the Motion for Summary Judgment to which he attached six "exhibits" that state the existence of video footage from some of the incidents alleged in the Complaint, along with photos, an incident report, NCDAC policy and procedure documents, grievance documents, and Plaintiff's medical records. (Docket Entries 38-1 through 38-9, Docket Entry 39.) Again, Defendants have filed a Reply to Plaintiff's Response. (Docket Entry 43.) Defendants' Motion for Summary Judgment is now ripe for ruling.

## II. **DISCUSSION**

### a. **Plaintiff's claims against individuals not named as defendants in this action should be dismissed.**

At the outset, the undersigned notes that Plaintiff brings claims against unknown officers (*see* Compl at 7, 9, 13) but does not name them as defendants. "If Plaintiff intends to name these unidentified individuals as Defendants in this matter, he must name them individually as John Doe defendants until they can be identified through discovery or otherwise." *Gause v. Jacobs*, No. 3:22-CV-00099-MR, 2022 WL 1084745, at *4 (W.D.N.C. Apr. 11, 2022) (unpublished); *see also Farmer v. Wilson*, No. 2:14-CV-13256, 2014 WL 4629591, at *1 (S.D.W. Va. Sept. 15, 2014) (unpublished) (collecting cases). Because Plaintiff has not done so, the undersigned finds that Plaintiff has failed to state a claim against the unknown officers and recommends that the claims against them should be dismissed. *Accord Lilakos v. New York City*, No. 14 CV 5288 (PKC)(LB), 2016 WL 11395018, at *10 (E.D.N.Y. Jan. 21, 2016) (unpublished) ("[Plaintiff] fails to state a claim because he fails to name any of the officers who were personally involved in his arrest as defendants, even as John Does."), *report and recommendation adopted*, No. 14CV05288PKCLB, 2016 WL 5928674 (E.D.N.Y. Sept. 30, 2016), *aff'd*, 808 F. App'x 4 (2d Cir. 2020).

Similarly, Plaintiff also mentions involvement by "officer bush [sic], officer McMillian[,]" and "SPG Sergent [sic] Betha[,]" none of whom are named as defendants in this action. "Rule 10(a) of the Federal Rules of Civil Procedure requires that the title of the complaint contain the names of all parties." *Hankins v. U.S. Customs & Border Prot. Agency*, No. 7:24-CV-468-BO-BM, 2025 WL 848441, at *3 (E.D.N.C. Mar. 18, 2025). "[T]o make someone a party[,] the plaintiff must specify [them] in the caption and arrange for service of process." *Myles v. United States*, 416 F.3d 551, 551 (7th Cir. 2005). Thus, to the extent Plaintiff has attempted to allege claims against

6

persons who are not named as defendants and for whom summonses have not been issued, the undersigned recommends that such claims should be dismissed. *See id.* (citations omitted).

### b. <u>Defendants' Motion for Summary Judgment should be granted.</u>

#### i. <u>Relevant Legal Standards</u>

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must affirmatively demonstrate there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear their burden either by presenting affirmative evidence or by demonstrating the non-moving party's evidence is insufficient to establish their claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-

7

serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49. Moreover, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

### ii. **Analysis**

#### 1. **Defendant's Motion for Summary Judgment**

Defendants argue that the "Court should find that Plaintiff's Complaint is frivolous and enter an order of dismissal with prejudice." (Docket Entry 33.) They move for summary judgment on several grounds. (*Id.*) First, insofar as Plaintiff has sued them in their official capacities, Defendants contend they are entitled to sovereign immunity. (*Id.* at 10.) Second, Defendants argue that Plaintiff's individual-capacity claims "should be dismissed because Plaintiff has failed to prove, beyond his baseless allegations, that [Hunt, Holmes and Covington] had any personal involvement in the alleged acts." (*Id.*) Third, Defendants argue that "Plaintiff has failed to prove that any Defendant violated his Eighth Amendment rights through their use of force." (*Id.*) Finally, Defendants argue that they are entitled to qualified immunity. (*Id.*)

#### 2. **Plaintiff's Response**

In Plaintiff's Response, he reiterates allegations regarding the incidents alleged in his Complaint. (*See* Docket Entry 38 at 2-9.) Plaintiff argues that Defendants should not be entitled to immunity and that the Defendants' Motion for Summary Judgment should be denied because "[a]ll of the Defendants had either personal involvement in the excessive use of force against

8

Plaintiff, stood in attendance and watched/witness the acts and did nothing to stop it, or knew that the acts were about to happen and did nothing to prevent the acts[.]" (*Id.* at 10.)

With regard to Incident Four, Plaintiff makes arguments in the nature of a claim against Covington for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment; he also argues that Covington and Scott are liable for supervisory liability related to said claim. (*See id.* at 11-12.) With regard to Incident Five, Plaintiff also makes arguments for Eighth Amendment deliberate indifference and supervisory liability against Covington. (*See id.* at 12.)[5]

Plaintiff argues that "Defendants [took] Plaintiff to the off-camera shower cell in receiving to use force because they knew it would be a safe place to use excessive force and violate Plaintiff's Eighth Amendment." (*Id.*) Plaintiff argues that "[t]his also shows malicious intent. Using force of [sic] camera clearly shows that the Defendants had evil motives to abuse their authority in a way that they could make efforts to cover up their acts. (*Id.* at 12-13.)

Plaintiff claims that "[i]t can be seen on video documents that Defendants acted in malice with harmful intent to cause injury by the Defendants using deadly force to Plaintiff while Plaintiff was harmless and secured in restraints." (*Id.* at 13.) Plaintiff argues that Defendants' use of force against him while he was restrained violates North Carolina Department of Adult Corrections ("NCDAC")[6] policy. (*See id.* at 13-15.) Plaintiff further

---

[5] Plaintiff appears to allege for the first time that a sixth incident ("Incident Six") took place on July 28, 2022, around 2:30 p.m., in which Hunt "beat, punched, kicked and choked" Plaintiff (*Id.*)

[6] Plaintiff's filings reference the North Carolina Department of Public Safety. "The North Carolina Department of Public Safety is now called the North Carolina Department of Adult Corrections (NCDAC)[,] and the Court will refer to it accordingly." *Evans v. Ishee*, No. 1:23-CV-00087-MR, 2023 WL 3671821, at *1 (W.D.N.C. May 25, 2023) (unpublished).

9

argues that "the Defendant shown [sic] a pattern of events by purposely taking Plaintiff to off-camera locations to use force against Plaintiff repeatedly over the course of two days." (*Id.* at 14.) Plaintiff claims that the Photos filed at Docket Entry 38-7 at 1-6 "show the obvious distress and pain Plaintiff endured." (*Id.* at 14.)

With regard to Incidents One through Five, Plaintiff further argues that "[t]he amount of force used was not proportional to the need." (*Id.* at 16.) Plaintiff argues that he was not a threat to staff safety and that he never attempted to commit assault or resisted staff. (*See id.* at 17.) Plaintiff claims "[t]here is documented evidence of injuries" including his having "received a swollen face, a swollen nose, a bleeding nose, a split open lip, a split head, a split eyebrow, permanent back pain, a dislocated jaw, and slight loss of vision in right eye. (*See id.* at 18 (citing Docket Entry 39).) Plaintiff argues that he has been disabled by these "permanent injuries[,]" causing him to lose "a portion of the sight in his right eye" and his "ability to perform labor to work a physical job to provide for himself" and "function pain-free." (*See id.*) Plaintiff argues that Defendants are not entitled to qualified immunity because they intentionally violated Plaintiff's clearly established constitutional rights, were motivated by malicious intent, and willingly violated the law. (*See id.* at 19.)

### 3. **This Court's Findings**

#### ***Sovereign Immunity***

The Court first considers Defendants' argument that the claims against them in their official capacities are barred by sovereign immunity. (*Id.* at 10-11.) The Eleventh Amendment prohibits actions in federal court against a state unless the state has consented to suit or unless Congress has lawfully abrogated the state's Eleventh Amendment immunity. *Ballenger v. Owens,*

352 F.3d 842, 844-45 (4th Cir. 2003). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). It follows that just as "the Eleventh Amendment bars a damages action against a state in federal court," it also bars suit against state officials in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Here, all Defendants are employees of the State of North Carolina and immunity has not been waived. Therefore, to the extent Plaintiff sues Defendants in their official capacities and seeks monetary damages, sovereign immunity precludes the action. *Dale v. FNU Barnes*, No. 1:23CV373, 2024 WL 4416440, at *3 (M.D.N.C. Oct. 4, 2024). Therefore, the undersigned recommends that the Motion for Summary Judgment should be granted as to the claims against Defendants in their official capacities.

### *Eighth Amendment Excessive Force*

Again, Plaintiff asserts that Defendants used excessive force against him in violation of the Eighth Amendment when they allegedly assaulted, beat, pepper sprayed, and/or tased him "5 times in a series of events on the days of 7-27-22 and 7-28-22." (*See* Compl. at 4, 7-10, 13; Docket Entry 38 at 10-19.) The Eighth Amendment protects prisoners from "unnecessary and wanton infliction of pain." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (internal quotation omitted). When evaluating an excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Id.* at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To make this determination, the Court considers two elements: "whether

11

the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered, or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).

The Supreme Court has set forth a list of non-exclusive factors to assist courts in determining whether an officer has acted with a culpable state of mind: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko*, 530 U.S. at 239 (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)) (internal quotations omitted). The objective component focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (citing *Hudson*, 503 U.S. at 7). The Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation and citation omitted). "Prison officials are given a certain amount of discretion in decisions to use force" because "they are frequently called upon to maintain order, quell disturbances, and act in haste, under pressure." *Geddings v. Roberts*, 1:15CV264, 2018 WL 1626116, at *9 (M.D.N.C. Mar. 30, 2018) (unpublished) (cleaned up).

Defendants argue that summary judgment is appropriate on the excessive force claim because Plaintiff "failed to sufficiently plead malice and injury." (Docket Entry 33 at 14-24.) Defendants contend that the application of force was necessary to prevent further harm and restore order, that the amount of force used was proportional to the need, that Plaintiff was a perceived and actual threat to staff safety and institutional order, and that the record shows

12

that Defendants used only the force necessary to ensure Plaintiff complied with direct lawful orders. (*See id.* at 14-21) Defendants deny Plaintiff's allegations of injury and argue that the evidence shows Plaintiff's injuries, if any, were minimal and thus not sufficiently serious to constitute an Eighth Amendment excessive force violation. (*See id.* at 21-24.)

### Evidence Submitted by Defendants

Defendants support their arguments with evidence. (*See generally* Docket Entries 32, 33, 34.) Said evidence includes medical records that indicate Plaintiff was injured[7] as a result of multiple being "beaten, tased, and [pepper] sprayed" during altercations with prison staff on July 27 and 28 2022; that Plaintiff was uncooperative, agitated, upset, irate, combative, and verbally abusive, that Plaintiff made multiple death threats to personnel and their families (for example, "I am going to kill on [sic] of you white people who keep bugging me if not you someone else in this place, in uniform or out watch out." (Docket Entry 34-1 at 331)), that he spit in the face of a custody officer, and that he refused to comply with recommended medical procedures. (*See, e.g.*, Docket Entry 34-1 at 123-27, 139, 147, 149, 153, 157.)

Said medical records also includes a mental health referral screening report in which a psychologist made a finding that "clearly supported malingering/high exaggeration of problem areas for what appeared to be the purpose of pretending to have severe psychopathology …. His previous testing indicates severe malingering." (*Id.* at 78.) Said records also include a clinical

---

[7] The medical records indicate Plaintiff experienced redness, hemorrhaging, abrasions, tenderness, swelling, bruises, decreased range of motion, and pain to his right shoulder, right knee, right ankle, left shin, jaw, eye; headaches, popping in his jaw, as well as open skin sores where taser leads landed on his shoulder. (*See generally* Docket Entry 34-1.) The documentation filed by both parties indicates Plaintiff was offered and received treatment for these injuries (*see generally id.*; *see also* Docket Entry 39), except when he refused it (*see, e.g.*, *id.* at 288, 293 (documenting refusal of treatment by Plaintiff)).

13

encounter on July 29, 2022, in which an RN stated Plaintiff "stated repeatedly that he needed to go to the hospital, however was unable to give specific injuries or location of any injuries that needed to be evaluated or treated. Redness noted to right eye but no other visible injuries noted at this time." (*Id.* at 138.) One record dated "07/27/2022 16:27" stated "Offender taking finger and pushing it up nostrils attempting to retrieve blood." (*Id.* at 152.) Also included among said records are multiple sick call requests made by Plaintiff alleging he was assaulted multiple times by prison staff that caused him injuries. (*See, e.g.*, *id.* at 261-66, 277-80, 283-85.) All of said sick calls include notation that clinical visits were scheduled in response to Plaintiff's requests. (*See id.*) The medical records attached to Defendants' Motion for Summary Judgment also contain multiple sick call appointment requests and clinical encounter documentation regarding medical requests prior to the alleged incidents on July 27 and 28 2022. (*See, e.g.*, *id.* at 371-84.)

Said evidence also includes NCDAC incident reports of Incident One (Docket Entry 34-2), Incident Two (Docket Entry 34-3), Incident Four (Docket Entry 34-4), and Incident Five (Docket Entry 34-5).[8]

With regard to Incident One, the incident report states that Plaintiff

repeatedly stated that he was going have his homeboys in the parking lot to shoot staff up, as they entered into Receiving [Plaintiff] was showing aggression, … Gibson noticed contents in [Plaintiff's] mouth, [Plaintiff] spit contents out of his mouth and then spit at the officers and started to walk towards them, … Gibson administered O.C. pepper spray to the facial area. [Plaintiff] refused to be decontaminated. [Plaintiff] was placed in handcuffs and escorted to the clean shower. [Plaintiff] was given a direct order for a complete search[,] [Plaintiff] refused and stuffed a white bag in his mouth, [Plaintiff] was told multiple times to spit what he had out, [Plaintiff] refused. … Gibson witnessed … Walker utilize the CEW on [Plaintiff], [Plaintiff] was then escorted to medical for assessment. …

---

[8] Plaintiff does not name the individual who he alleges assaulted him in Incident Three, and Defendants produce no evidence regarding said incident.

14

Walker then observed two unknown objects in [Plaintiff's] waistband, when [Plaintiff] attempted to grab the unknown items in his waistband. … Walker reached and placed [Plaintiff's] right arm in a bent wrist and placed him on the floor, [Plaintiff] then snatched away and placed his right arm under his body, the CEW was administered to the upper right back area to gain compliance, [Plaintiff] then removed his arm and was placed in handcuffs, the unknown [sic] in his mouth was removed which was 35 suboxone strips, two packages of a green leafy substance that appear to [be] marijuana and 14 strips of k-2. The unknown objects that were removed from his waistband was [sic] found to be two sharpened metal homemade weapons. The contraband was turned over to the OIC per DPS policy. … Walker observed [Plaintiff] for one hour due to be [sic] OC pepper sprayed. …

Holmes stated that [Plaintiff] was very hostile and threatening staff by saying that he was going to have his blood homeboys shoot her and … Gibson. …

Video camera footage was viewed, on 7/27/22 at 0953 hours, … Holmes and Gibson are in Receiving, at 0958 hours … Covington enters Receiving through IR-l (medical door) he and … Gibson talk briefly. However, due to the location of the camera the actual incident is not captured. …

Based on the statements, use of force was justified, only the amount of was force used to achieve the necessary objective. All policies and procedures were followed.

(Docket Entry 34-2 at 2-4.)

With regard to Incident Two, the incident report states that

Scott stated while working on Mcon [Plaintiff] was placed in the holding cell. [Plaintiff] was irate and stated[,] "On Blood you dead on blood you dead." … Scott stated he informed [Plaintiff] that his issue is not with Macon staff and that they don't know what's going on. [Plaintiff] then started punching the glass in the cell door. … Scott then stated he gave [Plaintiff] a direct order to stop punching the glass [with] which he complied. … Scott then gave [Plaintiff] a directive to submit to cuffs due to the fact he was being placed in Restrictive Housing …. [Plaintiff] refused to comply stating[,] "Fuck you bitch ass on blood your whole family is dead bitch ass." … Scott stated he then administered a burst of oc pepper spray to the facial area of the [Plaintiff]. [Plaintiff] was then taken to receiving for decontamination. [Scott] stated he was then relieved by … Walker. …

Walker stated that … he responded to an Inmate disturbance in the Mcon hallway holding cell. … Walker stated when he responded he observed [Plaintiff] creating a disturbance using profane language. [Plaintiff] was given a directive to submit to handcuffs and be placed in his Restrictive Housing bed assignment. [Plaintiff] refused and then [Walker] observed Scott administrate

[sic] oc pepper spray to the facial area of [Plaintiff]. [Plaintiff] was placed in handcuffs and removed from the holding cell and escorted to receiving. …

Walker stated while he was assisting with the decontamination of [Plaintiff] in receiving due to being exposed to OC pepper spray. During the process, [Plaintiff] stated "word to blood … When he gets a phone call yall are shot, it's going to be 100 shots into yall houses when he gets yall names [sic]."] [Plaintiff] also stated he call the homies Taliban and streets and it was over [sic], … Walker stated he then gave [Plaintiff] an order to decontaminate which he refused. Medical staff had come in receiving and tried to evaluate [Plaintiff]. [Plaintiff] then became combative and attempted to resist medical staff. … Walker stated then administered l and a half of [sic] oc pepper spray. [Plaintiff] decontaminated per DPS Policy[.]

[The viewable video evidence and the statements of other correctional officers who were involved in or witnessed this event are consistent with the statements by Scott and Walker.]

[With regard to Plaintiff,] staff followed all policies and procedures we have in place for this type of incident.

(*See* Docket Entry 34-3 at 6-22.)

With regard to Incident Four, the incident report states that Oxendine

stated that he assisted in escorting [Plaintiff] to the MCON Exam room. While being escorted [Plaintiff] become irate and uncooperative, by refusing to walk. [Plaintiff] was placed on a flat surface (floor) in order to gain compliance. Once inside the MCON Exam room, [Plaintiff] spit on … Oxendine, and attempted to assault … Oxendine, by kicking towards his stomach area. Staff members separated … Oxendine and [Plaintiff], in order to prevent assault. … Oxendine assisted with escorting [Plaintiff] to medical from Receiving, while waiting for IR1 door to be opened, [Plaintiff] turned aggressively towards … Oxendine and spit. … Oxendine utilized his left hand to tum [Plaintiff's] head in order to prevent further assault. [Oxendine] then assisted staff with placing [Plaintiff] on a flat surface (wall). [Plaintiff] continued to resist staff after he was placed on a flat surface. [Plaintiff] was able to take control of … Oxendine's left arm at which time … Oxendine was able to use his right hand to perform two counter strikes to [Plaintiff's] brachial plexus tie in. [Plaintiff] then slipped out [sic] his right handcuff, and at that [Oxendine] attempted to perform a strike to [Plaintiff's] brachial Plexus tie in again, when [Plaintiff] moved, and he was struck in the brachial origin. … Oxendine was then removed from the situation. …

Walker stated that he assisted in escorting [Plaintiff] to the MCON Exam room for assessment. While escorting [Plaintiff, Plaintiff] began using profane

16

language stating[,] "You faggot ass bitches gonna have to kill me or ship me!" [Plaintiff] was given a direct order to stop his actions and he refused. [Plaintiff] then attempted to pull away from staff. … Walker then placed [Plaintiff] on the wall utilizing the upper arm control. [Plaintiff] was then escorted to the exam room, and [Plaintiff] again became combative. … Walker then utilized the upper arm control and placed [Plaintiff] to a flat surface floor [sic]. [Plaintiff] was escorted to Receiving. After the complete search was conducted, … Walker assisted … Oxendine escort [sic] [Plaintiff] to Main Medical, due to [Plaintiff] aggressive and irate behavior he and … Oxendine had control of [Plaintiff] [sic]. While waiting for IR1 door to open … Walker observed [Plaintiff] turn towards … Oxendine and spit on him. … Oxendine deflected [Plaintiff] spitting on him. … Walker then assisted placing [Plaintiff] on a flat surface (wall). [Plaintiff] continues to be resistant and aggressive with staff and grabs … Oxendine['s] hand, … Oxendine then performs strikes to [Plaintiff's] shoulder area to break the hold. [Plaintiff] then slips on [sic] the handcuffs and attempts to strike towards … Oxendine. … Oxendine the performs a strike to [Plaintiff]. … Walker then places [Plaintiff's] free hand back into the restraints. …

[No photo evidence of this incident is available. The available video evidence and the statements of other correctional officers who were involved in or witnessed this event are consistent with the statements by Oxendine and Walker.] … All policies and procedures were followed involving use of Force … Staff utilized an appropriate amount of force to obtain the correctional objective. … Oxendine did exacerbate the situation, and he was removed from the situation by fellow staff members. He received a coaching for his actions.

(Docket Entry 34-4 at 2-39.)

With regard to Incident Five, the incident report states that Plaintiff

assaulted … Gibson by spitting in his facial area. Use of force was conducted incident [sic]. During the search of [Plaintiff,] a homemade weapon was found. … Gibson stated … he observed [Plaintiff] standing on the bench. … Gibson stated he gave [Plaintiff] a direct order to get down which he refused and started yelling … Gibson stated at that time [Plaintiff] spit on him. … Gibson then administered oc pepper spray to [Plaintiff's] facial area and called for assistance. … Gibson assisted in placing [Plaintiff's] right hand in cuffs. … Gibson stated he was not injuried [sic] but assaulted.

… Walker reported … he responded to [an] Inmate disturbance in the Red Unit hallway. When he arrived … he observed [Plaintiff] spit on … Gibson. … Walker stated he then observed … Gibson administrate [sic] oc pepper spray to [Plaintiff]. … Walker stated he gave [Plaintiff] a direct order to submit to cuffs and he refused. … Walker stated he then administered oc pepper spray

17

to [Plaintiff]. [Plaintiff] was then removed from the holding cell and escorted to receiving for decontamination. …

[Scott stated that] during the search of [Plaintiff] a homemade knife was found in the rights [sic] pocket of [Plaintiff's] pants. At that time [Plaintiff] became very irate stating "he was going to touch him up, bitch."

[The available video evidence and the statements of other correctional officers who were involved in or witnessed this event are consistent with the statements by Gibson and Walker.] … Based on the evidence gathered, it appears this use of force was justified in order to achieve the correctional objective. All other policies and procedures appear to have been followed.

[Plaintiff was found guilty of a variety of disciplinary infractions as a result of the incident described above.]

(Docket Entry 34-5 at 2-15.)

After careful consideration of the above, the undersigned finds that the evidence submitted by Defendants supports a finding that the uses of force occurred in response to irate, noncompliant (including possession of contraband), abusive, threatening (including possession of weapons), and occasionally assaultive behavior by Plaintiff; were necessary and proportional; caused minimal injuries; and were motivated not by malicious or sadistic intent, but instead applied in good faith for the purpose of neutralizing the threats posed by Plaintiff, restoring order and discipline, and maintaining safety in the prison. The Court notes that:

[c]orrections officers act in a good faith effort to maintain or restore discipline — that is, with a permissible motive — not only when they confront immediate risks to physical safety, but also when they attempt to preserve internal order by compelling compliance with prison rules and procedures." *Brooks v. Johnson*, 924 F.3d 104, 113 (4th Cir. 2019) (internal quotation marks omitted); *see also id.* at 117 (agreeing "that inmates cannot be permitted to decide which orders they will obey, and when they will obey them" (internal brackets and quotation marks omitted)). "And [courts] owe [corrections] officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security." *Id.* at 113 (internal quotation marks omitted).

*Diamond v. Odedere*, No. 1:22CV287, 2024 WL 230113, at *4 (M.D.N.C. Jan. 22, 2024) (unpublished), *report and recommendation adopted*, No. 1:22CV287, 2024 WL 1014123 (M.D.N.C. Mar. 8, 2024).

Accordingly, the undersigned finds that Defendants needed to apply force to neutralize the extensive threats they reasonably perceived Plaintiff poses, that the amount of force used was proportional to accomplishing that task, and that Defendants who applied force acted within their discretion and tempered the severity of their response by following policy and by using only enough force to gain Plaintiff's compliance and ensure their own safety. *Cf. Whitley*, 475 U.S. at 321. Thus, Defendants have carried their initial burden of coming forward and demonstrating the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 322; the burden now shifts to Plaintiff to affirmatively demonstrate that there is a genuine issue of material fact which requires trial, *Matsushita*, 475 U.S. at 587.

### Evidence Submitted by Plaintiff

Although Plaintiff references "exhibits" (consisting essentially of statements that video evidence exists, but not of the videos themselves), the majority of Plaintiff's Response is comprised of repetitions of and expansions[9] on the claims he raised in his Complaint. (*See generally id.*) At the Summary Judgment stage, the Court cannot weigh evidence or engage in credibility findings. *See Tekman v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 959 (4th Cir. 2022). Even so, as shown below, Plaintiff fails to support his allegations and arguments with any

---

[9] The undersigned notes that Plaintiff cannot amend the Complaint by alleging new claims in his Response to Defendants' Motion for Summary Judgment. *See Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008); *United States v. Jones*, No. 87-7313, 1988 WL 21257, at *1 (4th Cir. 1988) (unpublished). Accordingly, to the extent Plaintiff raises new facts and claims in the Response that did not appear in the Complaint, the Court disregards such claims and facts. *See Murray v. Tina*, No. 5:18-CT-3026-FL, 2020 WL 1490696, at *5 (E.D.N.C. Mar. 24, 2020) (collecting cases); *see also S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing….").

evidence sufficient to defeat a motion for summary judgment. (*See, e.g.*, Docket Entry 38 at 17 (wherein Plaintiff argues "Plaintiff has proven these claims to be false with support of video documented exhibits" but does not submit any video footage evidence whatsoever).)

As to Plaintiff's Exhibits 1 through 6, Plaintiff references video evidence and provides what he says are descriptions of said videos. (Docket Entries 38-1 through 38-6.) The descriptions suggest, to wit, the existence of surveillance camera footage of Incident One, Incident Two, Incident Three, and Incident Six. (*See id.*) However, no party has filed the video footage itself with the Court. "Accordingly, the [C]ourt has considered only the [evidence] in [the] record." *See West v. Fine Rugs of Charleston*, Inc., No. CV 2:23-6389-RMG-PJG, 2025 WL 1625574, at *6 n.4 (D.S.C. Mar. 18, 2025), *report and recommendation adopted*, No. 2:23-CV-6389-RMG, 2025 WL 1261203 (D.S.C. May 1, 2025). Mere descriptions of video footage amount to conclusory allegations unsupported by evidence in the record; thus, without more, they cannot defeat a motion for summary judgment. *See Vick v. Stone*, No. 5:22-CT-3022-FL, 2024 WL 5445063, at *4 (E.D.N.C. Sept. 27, 2024), *aff'd*, No. 24-6986, 2025 WL 689414 (4th Cir. Mar. 4, 2025) (citing *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) ("[C]onclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion."); *Evans*, 80 F.3d at 960 (explaining "unsubstantiated allegations and bald assertions" cannot defeat a motion for summary judgment)).

As to the five photos attached as "Exhibit 7," they are time-stamped "07/28/2022 10:24[,]" "07/28/2022 14:25[,]" and "07/28/2022 14:64[;]" they appear to depict a man being restrained by one or two other individuals. (*See* Docket Entry 38-7 at 1-6.) However, the photos do not conclusively confirm or deny Plaintiff's arguments, as they lack color and are

Case 1:23-cv-00411-WO-JLW    Document 44    Filed 08/15/25    Page 20 of 29

generally of low quality and poor resolution. *Cf. Barrett v. Moody*, No. 19-CV-190JLS(SR), 2023 WL 2898310, at \*8 (W.D.N.Y. Feb. 23, 2023) (unpublished), *report and recommendation adopted*, No. 19CV190JLSHKS, 2023 WL 2898659 (W.D.N.Y. Apr. 10, 2023). Thus, the undersigned finds that they provide no support to Plaintiff's argument that Defendants' Motion for Summary Judgment should be denied.

As to the documents attached as "Exhibit 8[,]" they contain Plaintiff's medical records. (Docket Entry 39.) Said records include, in pertinent part, documentation of clinical encounters in which Plaintiff reported pain or trauma in his head, eye, eyebrow, jaw, back, and shoulder as a result of an altercation with custody (*see id.* at 2-5, 16-22, 24-43), of sick calls pertaining thereto (*id.* at 6, 8, 12-15, 45-47, 49, 51-53), of dental treatment (*id.* at 7, 9-11), of a mental health services referral (*id.* at 48), and of a medication summary (*id.* at 55).

They also include documentation of a clinical encounter on July 27, 2022, which reports that Plaintiff complained of injuries and pain to his eyebrow, lip, neck, arms, face, jaw, ear, back, and legs caused by a use of force by custody, but that he refused a use-of-force assessment; that Plaintiff stated "they jumped me three times, sprayed me and tazed me[;]" that Plaintiff was "yelling and cursing at staff[;]" and that Plaintiff stated "he's got people coming to this prison that will kill one of them or more and their families. Inmate stated out loud (screaming) that …" (*Id. at* 23.) The remainder of said report is not included in Plaintiff's attachments, but it is included in Defendants' attachments, and it states: "… he's already killed 2 people himself and it's nothing to him to kill all of them (custody). He called out names like "fat ass", faggot", mother F#@$" [sic]. He was very irate and had to be constantly redirected to answer providers [sic] questions." (Docket Entry 34-1 at 123.)

21

Another encounter report dated "07/27/2022 16:27" states, "Offender highly agitated and unwilling to be fully assessed for neuro checks. Yelling and cursing at staff. No swelling noted to head that was observed through door vision glass. Offender taking finger and pushing it up nostrils attempting to retrieve blood. Alert and oriented at time of observation." (Docket Entry 39 at 38.) Another encounter report dated "07/27/2022 11:37" states

> "Offender in receiving decontamination cell complaining 'I am hot' uncooperative to custody. Approximately 10 mins Offender is escorted in to [sic] main medical by custody then falls on the floor as limp, then placed in medical chair for assessment, then states 'I can't breath [sic], they have beat me and jumped me three times, sprayed me and tased me.' " …

> Yes: Appears in Distress, Appears in Pain, Visible Injury, Well Developed/Well Nourished, Alert and Oriented to Time, Place, and Person

> On arrival to medical and being placed in medical chair, leaning forward with eyes closed, then becomes highly agitated, starts cursing, yelling at staff, blood noted to face, scalp and clothes, alert and oriented x 3 to name, dob, opus. Open laceration to left eye brow [sic] measuring 2 cm x 1 cm with small amount of bloody drainage, swelling and dried blood noted to left top of scalp with no open lacerations visualized through hair measuring 5 cm x 4 cm. Eyes are reddened …. Abrasions noted to lower lip without drainage. Redness noted the back of his neck. Clear and even respirations noted with clear lung sounds …. No rhonchi or wheezes noted.

(*Id.* at 39-41.)

Another encounter report dated "07/28/2022 00:02" states Plaintiff was bruised and bleeding and that "4 puncture marks from taser [were] noted on [Plaintiff's] right upper back. (*Id.* at 37.) Said report goes on to state that Plaintiff made "multiple threats toward day shift custody staff. [Plaintiff] states 'I got 2 murder charges, what's one more to me?' [Plaintiff] was seen earlier for use of force assessment. [NP] notified due to multiple injuries." (*Id.*)

Defendants do not dispute that Plaintiff was injured; all of the above medical records were also filed by Defendants as attachments to their sealed brief in support of their Motion

22

for Summary Judgment. (Docket Entry 34-1 at 34-37, 92, 93, 98, 99-101, 104-07, 112-13, 116-19, 122-23, 128-39, 148-49, 153-55, 204-05, 261-65, 283-85, 349.)

As to the document attached as "Exhibit 9[,]" it contains NCDAC policies and procedures on the use of force; Defendants also attach the same document. (*Compare* Docket Entry 38-8 *with* Docket Entry 34-6.) Plaintiff does not provide any separate evidence that said policies or procedures were violated; he only offers conclusory and unsupported allegations thereof. Thus, the undersigned finds said document is not evidence that creates a genuine issue of material fact or otherwise supports a finding denying Defendants' Motion for Summary Judgment.

Lastly, as to the document attached as "Exhibit 10[,]" it contains documents pertaining to grievances filed by Plaintiff pursuant to the NCDAC's Administrate Remedies Procedures ("ARP").[10] (Docket Entry 38-9.) Said attachment includes an NCDAC Inmate Grievance Resolution Board ("IGRB") document that states "it appears the facility has taken the appropriate action … . Thus, this grievance is considered resolved by IGRB staff." (*Id.* at 2.) It also includes NCDAC ARP forms filled out by Plaintiff dated "8/18/22" and "10/13/22" in which he appears to complain of Incidents One, Two, Three, Four, and/or Five. (*See id.* at 3-5, 8.) It also includes a DC-410 Screening Response, an NCDAC Step One unit response, and a Step Two grievance appeal (*See id.* at 6-7, 10.) Here, Defendants do not dispute that Plaintiff exhausted his administrative remedies with respect to the incidents he alleges in his Complaint. (*See generally* Docket Entries 33, 34.) Thus, these documents provide no basis to

---

[10] The ARP establishes a three-step procedure governing submission and review of inmate grievances. *Moore v. Bennette*, 517 F.3d 717, 721 (4th Cir. 2008). Inmates are required to exhaust administrative remedies with the NCDAC in accordance with ARP. *Id.* An inmate does not exhaust his administrative remedies with the NCDAC until he completes all three steps of the ARP. *Id.*

Case 1:23-cv-00411-WO-JLW    Document 44    Filed 08/15/25    Page 23 of 29

support a finding that Defendants' Motion for Summary Judgment should be denied. *See Montalvo v. Owen*, No. 6:10-CV-01626-RBH, 2010 WL 4751576, at *3 (D.S.C. Nov. 16, 2010) (unpublished) ("While Plaintiff is correct that a prisoner is required to exhaust all available administrative remedies prior to filing a suit in federal court challenging the conditions of confinement, exhaustion of these claims is not at issue in this case.").

As discussed above, Defendants have met their initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. "Plaintiff's self-serving allegations are insufficient to withstand summary judgment." *Lewis v. Peterkin*, No. 1:19CV418, 2023 WL 6319553, at *16 (M.D.N.C. Aug. 31, 2023) (unpublished) (citing *Pronin v. Johnson*, 628 F. App'x 160, 161 (4th Cir. 2015)), *report and recommendation adopted*, No. 1:19-CV-418, 2023 WL 6314202 (M.D.N.C. Sept. 28, 2023). Thus, Plaintiff has presented no evidence to carry his burden of affirmatively demonstrating there is a genuine issue of material fact which requires trial.[11] Ultimately, Plaintiff must do more than merely explain why his case should not be dismissed—submission of affidavits and other competent evidence are required to defeat a summary judgment motion. *See Pledger v. Lynch*, 5 F.4th 511, 525 (4th Cir. 2021). Put differently:

> The non-moving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). This applies even where the non-moving party is a *pro se* prisoner. *Campbell-El v. Dist. of Columbia*, 874 F. Supp. 403, 406-07 (D.C. 1994). Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Similarly, "[t]he mere existence of some alleged factual dispute" cannot defeat a

---

[11] *Cf. Crawford v. Hawkins*, No. 5:20-CT-03325-M, 2023 WL 3437806, at *8 (E.D.N.C. May 12, 2023) (unpublished ) ("Because plaintiff's bald … claims merely rest upon the allegations in his complaint, … and because his responses in opposition to defendants' motion for summary judgment are speculative and unsupported, … he fails to [come forward with specific facts showing that there is a genuine issue for trial such that defendants' motion for summary judgment should be denied.]") (citations omitted).

> motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it "might affect the outcome of the suit under the governing law." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001) (emphasis omitted).

*Harrison v. Avent*, No. 1:23CV259 (RDA/WEF), 2025 WL 2076464, at *4 (E.D. Va. July 23, 2025).

Here, as shown above, Plaintiff, the non-moving party, has merely set forth conclusory allegations and speculation unsupported by competent evidence. Accordingly, the undersigned finds that the dispute he argues is neither material nor genuine, and that there is insufficient evidence in the record favoring Plaintiff such that a fact finder could return a verdict in his favor or otherwise conclude that the use of force by any Defendant constituted excessive force in violation of the Eighth Amendment. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment should be granted and that the remainder of Plaintiff's claims should be dismissed with prejudice. *Cf. Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 62 (4th Cir. 1995) ("The building of one inference upon another will not create a genuine issue of material fact. Mere unsupported speculation … is not enough to defeat a summary judgment motion.").

## <u>*Qualified Immunity*</u>

Defendants also contend that they have qualified immunity, and that summary judgment should be granted on that basis. (*See* Docket Entry 33 at 10, 24-25.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials

25

performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010) (citation omitted). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009). Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

As discussed above, Plaintiff is unable to demonstrate a violation of his constitutional rights by any Defendant. Therefore, the undersigned concludes that Defendants are entitled to qualified immunity as to Plaintiff's claims against them. *See Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007) (finding that "[i]f [an official] did not violate any right, [they are] hardly in need of any immunity and the analysis ends right then and there"); *Parker v. Burris*, 2015 WL 1474909, at *8 (M.D.N.C. Mar. 31, 2015) (unpublished) (finding that "the absence of evidence supporting a finding that a constitutional violation occurred satisfies the first prong of the qualified immunity analysis"), *report and recommendation adopted*, No. 1:13CV488, 2015 WL 2169148 (M.D.N.C. May 8, 2015), *aff'd*, 623 F. App'x 82 (4th Cir. 2015).

Lastly, Defendants request that the instant action be dismissed with prejudice. (Docket Entry 34 at 10.) Because this Court has found on the merits that Defendants are entitled to summary judgment, this Court recommends that Plaintiff's Complaint should be dismissed

with prejudice. *Jasmaine v. Engrime*, No. 3:18-CV-00364-MR, 2020 WL 4504433, at *2 (W.D.N.C. Aug. 5, 2020) (unpublished) ("[T]he instant case will be dismissed with prejudice because Defendants are entitled to summary judgment on the merits of Plaintiff's claims ….").

### c. **Defendants' Motion to Seal should be granted.**

On November 20, 2024, Defendants filed the Motion to Seal. (Docket Entry 35). Along with the Motion, the Defendants filed an unsealed but redacted copy of their Memorandum and documents in support. (Docket Entry 33.) Defendants also filed mostly unredacted[12] copies of the Memorandum and documents in support under seal. (Docket Entry 34.) Defendants seek to seal all submitted medical records (Docket Entry 34-1 at 1-384). There has been a reasonable opportunity for any interested parties to address the matter. Plaintiff has not responded to or joined in the Motion to Seal, nor has any other party filed a response.

### i. **Relevant Legal Standards**

Because Defendants' Memorandum and Plaintiff's medical and prison records are submitted in connection with the Motion for Summary Judgment, the documents are judicial records, and the right of access is protected under the First Amendment. *Doe v. Pub. Citizen*, 749 F.3d 246, 267-68 (4th Cir. 2014). Therefore, the granting of a motion to seal is proper only when a compelling government interest is shown, and the sealing of the documents is narrowly tailored to meet the compelling interest. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). In considering the issue, the court must:

> [W]eigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity

---

[12] Instances of Plaintiff's date of birth are partially redacted in this filing. (Docket Entry 34.)

> to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

*Va. Dept. of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004).

North Carolina law addresses records maintained in state facilities providing mental health care and states in part that "no individual having access to confidential information may disclose this information." N.C. Gen. Stat. § 122C-52(b). The statute further states that "each client has the right that no confidential information acquired be disclosed by the facility." N.C. Gen. Stat. § 122C-52(c). The Health Insurance Portability and Accountability Act prohibits a person from disclosing "individually identifiable health information[.]" 42 U.S.C. § 1320d-6(a)(3). There is no blanket exception to the First Amendment right to access for medical records. *See Musgrove v. Moore*, No. 1:19-CV-164, 2022 WL 19977408, at *2 (M.D.N.C. Apr. 20, 2022) (unpublished). However, there is an "important governmental interest" in protecting sensitive medical information. *See Fulp v. Columbiana Hi Tech, LLC*, No. 1:16-CV-1169, 2018 WL 1027159, at *10 (M.D.N.C. Feb. 21, 2018) (unpublished).

### ii. <u>Analysis</u>

Here, "[w]hile Plaintiff's medical records contain information relevant to issues before the Court, the records also include highly personal facts about Plaintiff's prior medical history[,]" *Dale v. FNU Barnes*, No. 1:23CV373, 2024 WL 4416440, at *13 (M.D.N.C. Oct. 4, 2024), including mental health care received by Plaintiff while incarcerated. "The Court finds there is a compelling interest to protect such information." *Id.* The Court also finds there is no less restrictive way to protect the information than sealing the entirety of the medical records. *See Fulp*, 2018 WL 1027159, at *10. Interested parties have had an opportunity to

28

object to the request to seal the documents and no party has done so. Consequently, the undersigned orders that Defendants' Motion to Seal is granted with respect to Plaintiff's medical records filed as Defendants' Exhibit 1. (Docket Entry 34-1 at 1-384.)

### III.  <u>CONCLUSION</u>

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that all of Plaintiff's claims against individuals not named as Defendants in this action should be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 32) should be **GRANTED**. The undersigned recommends that Plaintiff's Complaint should be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal (Docket Entry 35) is **GRANTED**. The unredacted attachment filed as Defendants' Exhibit 1 (Docket Entry 34-1 at 1-384) shall remain permanently sealed.


　　　　　　　　　　　　　　　/s/  Joe L. Webster
　　　　　　　　　　　　　　United States Magistrate Judge



August 15, 2025
Durham, North Carolina